1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## EASTERN DISTRICT OF CALIFORNIA

10

11 | BMO BANK N.A.,

Case No.  1:24-cv-00634-SAB

12 |         Plaintiff,

FINDING AND RECOMMENDATIONS RECOMMENDING GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND DIRECTING CLERK OF THE COURT TO RANDOMLY ASSIGN A DISTRICT JUDGE TO THIS MATTER

13 |     v.

14 | RAJINDER SINGH CHEEMA,

15 |         Defendant.

(ECF No. 16)

16

17 | OBJECTIONS DUE WITHIN FOURTEEN DAYS

18

19       Currently before the Court is a motion for default judgment filed by BMO Bank N.A.

20 ("Plaintiff").

21       Following amendment of the Local Rules effective March 1, 2022, a certain percentage

22 of civil cases shall be directly assigned to a Magistrate Judge only, with consent or declination of

23 consent forms due within 90 days from the date of filing of the action.  L.R. App. A(m)(1).  This

24 action has been directly assigned to a Magistrate Judge only.  Not all parties have appeared or

25 filed consent or declination of consent forms in this action yet.  Pursuant to 28 U.S.C. §

26 636(b)(1)(B), Local Rule 302(c)(7), and Local Rule Appendix A, subsection (m), the Court shall

27 direct the Clerk of the Court to assign a District Judge to this action and the Court shall issue

28 findings and recommendations as to the pending motion for default judgment.

# I.

## BACKGROUND

Around October 10, 2018, Plaintiff and Rajinder Singh Cheema ("Defendant") entered into a loan and security agreement (hereafter "the Agreement") to finance a 2019 Peterbilt 389 tractor for Defendant to use in his business.  Defendant agreed to pay $226.627.12, including interest, pursuant to the terms and conditions of the Agreement.  (Compl. at ¶ 10, ECF No. 1.) Defendant failed to make the August 1, 2023, payment due under the Agreement and his default is continuing.  (Id. at ¶ 14.)  Pursuant to the Agreement, the entire amount due accelerated and Defendant owes the amount of $80,283.89.  (Id. at ¶ 15.)

On May 13, 2024, Plaintiff noticed Defendant of his default under the Agreement and Plaintiff's election to accelerate the loan.  (Id. at ¶ 21.)  Defendant has refused to pay the amount due and owing under the Agreement.  (Id. at ¶ 22.)  Under the Agreement, Plaintiff has the right to enter any premises where the tractor may be to take possession of and remove it, but Plaintiff has been unable to recover the tractor.  (Id. at ¶¶ 22-24.)

Around April 3, 2024, Plaintiff learned from Defendant that the tractor was located at JV Truck Service which does business as Fresno Truck.  (Id. at ¶ 27.)  Plaintiff sent repossession agents to Fresno Truck around April 3, 2024, and a repair invoice was presented to the agents. (Id. at ¶ 29.)  Around April 4, 2024, Plaintiff sent a letter to Fresno Truck offering to pay the statutory maximum allowed for repairs and demanding surrender of the tractor.  (Id. at ¶ 30.) Fresno Truck did not respond to the letter and Plaintiff had not received notice that Fresno Truck has initiated paperwork with the Department of Motor Vehicles to conduct a lien sale of the tractor.  (Id. at ¶¶ 31-32.)

On May 29, 2024, Plaintiff filed this action against Defendant Cheema, Fresno Truck Tire & Service, Inc., and Amarjit Singh pursuant to 28 U.S.C. § 1332(a) alleging state law claims of conversion, claim and delivery against Defendants Fresno Truck & Tire Service, Inc. and Singh (collectively "Fresno Truck Defendants") and breach of contract against Defendant Cheema.  (ECF No. 1.)   The tractor was subsequently recovered (Mot. for Entry of Default ("Mot.") 3, ECF No. 16), and on July 10, 2024, Plaintiff filed a notice of voluntary dismissal

against Fresno Truck Defendants, and they were terminated from this action (ECF Nos. 7, 8).

On July 26, 2024, Plaintiff filed a request for entry of default against Defendant Cheema and default was entered.  (ECF Nos. 13, 14.)  On August 23, 2024, Plaintiff filed the instant motion for default judgment.  (ECF Nos. 16-19.)  Defendant Cheema has not filed an opposition to the motion.

## II.

## LEGAL STANDARD

"Our starting point is the general rule that default judgments are ordinarily disfavored," as "[c]ases should be decided upon their merits whenever reasonably possible."  NewGen, LLC v. Safe Cig, LLC, 840 F.3d 606, 616 (9th Cir. 2016) (quoting Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1986).  Pursuant to Federal Rules of Civil Procedure 55, obtaining a default judgment is a two-step process.  Entry of default is appropriate as to any party against whom a judgment for affirmative relief is sought that has failed to plead or otherwise defend as provided by the Federal Rules of Civil Procedure and where that fact is made to appear by affidavit or otherwise.  Fed. R. Civ. P. 55(a).  After entry of default, a plaintiff can seek entry of default judgment.  Fed. R. Civ. P. 55(b).  Federal Rule of Civil Procedure 55(b)(2) provides the framework for the Court to enter a default judgment:

> (b) Entering a Default Judgment.
>
> (2) By the Court. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared.  If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing.  The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:
>
> (A) conduct an accounting;
>
> (B) determine the amount of damages;
>
> (C) establish the truth of any allegation by evidence; or
>
> (D) investigate any other matter.

Fed. R. Civ. P. 55.

1   The decision to grant a motion for default judgment is within the discretion of the court.

2   PepsiCo, Inc. v. California Security Cans, 238 F.Supp.2d 1172, 1174 (C.D. Cal. 2002).  The Ninth

3   Circuit has set forth the following seven factors (the "Eitel factors") that the Court may consider in

4   exercising its discretion:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

8   Eitel, 782 F.2d at 1471-72.

9   Generally, once default has been entered, "the factual allegations of the complaint, except

10  those relating to damages, will be taken as true."  Garamendi v. Henin, 683 F.3d 1069, 1080 (9th

11  Cir. 2012) (quoting Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977)); see also Fed.

12  R. Civ. P. 8(b)(6) ("An allegation--other than one relating to the amount of damages--is admitted if

13  a responsive pleading is required and the allegation is not denied.").  Accordingly, the amount of

14  damages must be proven at an evidentiary hearing or through other means.  Microsoft Corp. v.

15  Nop, 549 F.Supp.2d 1233, 1236 (E.D. Cal. 2008).  Additionally, "necessary facts not contained in

16  the pleadings, and claims which are legally insufficient, are not established by default."  Cripps v.

17  Life Ins. Co. of North America, 980 F.2d 1261, 1267 (9th Cir. 1992) (internal citation omitted).

18  The relief sought must not be different in kind or exceed the amount that is demanded in the

19  pleadings.  Fed. R. Civ. P. 54(c).

20                                          **III.**

21                                    **DISCUSSION**

22  Before it may evaluate the Eitel factors to determine whether default judgment should be

23  entered, the Court must first determine whether it properly has jurisdiction in this matter.

24  **A.      Subject Matter Jurisdiction**

25  Federal courts are courts of limited jurisdiction and their power to adjudicate is limited to

26  that granted by Congress.  U.S v. Sumner, 226 F.3d 1005, 1009 (9th Cir. 2000).

27  A district court has diversity jurisdiction "where the matter in controversy exceeds the

28  sum or value of $75,000, … and is between citizens of different states, or citizens of a State and

4

citizens or subjects of a foreign state ….” 28 U.S.C. § 1332(a)(1)–(2).  The burden of proving the amount in controversy depends on the allegations in the plaintiff’s complaint.  See Lowdermilk v. U.S. Bank Nat’l Ass’n, 479 F.3d 994, 998–1000 (9th Cir. 2007).  When the complaint alleges damages less than the jurisdictional requirement, the party seeking to establish diversity jurisdiction must prove the amount in controversy with legal certainty.  Lowdermilk, 479 F.3d at 1000; Rynearson v. Motricity, Inc., 601 F.Supp.2d 1238, 1240 (W.D. Wash. 2009).

Here, Plaintiff asserts that the amount in controversy exceeds $75,000.  (Compl. at ¶ 1.)  Plaintiff alleges that the amount due and owning on the loan is $80,283.89.  (Id. at ¶ 15.)  There is also interest in the amount of $5,318.14, with a daily default rate of interest accruing of $40.14; and late fees in the amount of $1,770.45 owing on the loan.  (Id. at ¶¶ 16-18.)  Additionally, under the Agreement, Defendant Cheema is obligated to pay all expenses of retaking, holding, and preparing for sale and selling the tractor, and attorney fees and costs incurred in this lawsuit.  (Id. at ¶¶ 19-20.)  In the current motion, Plaintiff is seeking to recover $100,705.91 for principal, accrued interest, late fees, legal fees, and costs.  (Mot. at 8.)  Therefore, the amount in controversy requirement is satisfied.

The complaint alleges that Plaintiff is a national association with its main office in Chicago, Illinois.  (Compl. at ¶ 4.)  Defendant Cheema is a resident and citizen of California.[1]  (Id. at ¶ 5.)  Thus, Plaintiff has established complete diversity between the parties named in the lawsuit and the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

Accordingly, the Court has subject matter jurisdiction over Plaintiff’s complaint based on diversity.

**B.     Jurisdiction Over Defendant**

1.    Legal Standards for Service of Process

As a general rule, the Court considers the adequacy of service of process before evaluating the merits of a motion for default judgment.  See J & J Sports Prods., Inc. v. Singh,

---

[1] Although now dismissed, the complaint alleges that the Fresno Truck Defendants were also citizens of California. Fresno Truck & Tire Service, Inc. is a California corporation with its principal place of business in Fresno, California.  Defendant Singh is a resident and citizen of California and the sole officer and director of Fresno Truck & Tire Service, Inc.  (Compl. at ¶¶ 6-7.)

No. 1:13-cv-1453-LJO-BAM, 2014 WL 1665014, at *2 (E.D. Cal. Apr. 23, 2014); <u>Penpower Tech. Ltd. v. S.P.C. Tech.</u>, 627 F.Supp.2d 1083, 1088 (N.D. Cal. 2008); <u>Mason v. Genisco Tech. Corp.</u>, 960 F.2d 849, 851 (9th Cir. 1992) (stating that if party "failed to serve [defendant] in the earlier action, the default judgment is void and has no *res judicata* effect in this action.").

Service of the summons and complaint is the procedure by which a court having venue and jurisdiction of the subject matter of the suit obtains jurisdiction over the person being served. <u>Miss. Publ'g Corp. v. Murphree</u>, 326 U.S. 438, 444–45 (1946); see <u>Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc. (Direct Mail)</u>, 840 F.2d 685, 688 (9th Cir. 1988) ("A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed. R. Civ. P. 4.").

Service of a complaint in federal court is governed by Rule 4.  Under Rule 4(e), an individual may be served by: (1) delivering a copy of the summons and the complaint to that person personally; (2) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (3) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.  Fed. R. Civ. P. 4(e)(2).

"Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint."  <u>Direct Mail</u>, 840 F.2d at 688 (quoting <u>United Food & Com. Workers Union v. Alpha Beta Co.</u>, 736 F.2d 1371, 1382 (9th Cir. 1984)).  However, "without substantial compliance with Rule 4, 'neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction.' "  <u>Direct Mail</u>, 840 F.2d at 688 (quoting <u>Benny v. Pipes</u>, 799 F.2d 489, 492 (9th Cir. 1986)).  "Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4."  <u>Brockmeyer v. May</u>, 383 F.3d 798, 801 (9th Cir. 2004) (citations omitted).  "[A] signed return of service constitutes *prima facie* evidence of valid service which can be overcome only by strong and convincing evidence."  <u>SEC v. Internet Sols. for Bus., Inc.</u>, 509 F.3d 1161, 1163 (9th Cir. 2007).

    2.   <u>Service on Defendant Cheema</u>

The proof of service returned shows that three attempts were made to execute service of

1  process on Defendant Cheema.  On June 20, 2024, at 6:06 p.m., and July 21, 2024, at 7:58 a.m.,

2  there was no answer at Defendant Cheema's residence.  (Decl. of Diligence, ECF No. 9 at 3.[2])

3  On July 22, 2024, at 12:02 p.m. a third attempt was made and per the co-occupant of the

4  residence, Defendant Cheema was not home so substitute service was effected on Defendant's

5  wife.  (Id.; Proof of Service at 2, ECF No. 9.)  Thereafter, on June 24, 2024, a copy of the papers

6  was mailed to Defendant Cheema.  (Id. at 2, 4.)

7       On this record, the Court concludes that service was properly effected on Defendant

8  Cheema, and the Court has jurisdiction over this matter.

9       **C.    Evaluation of the Eitel Factors in Favor of Default Judgment**

10      For the reasons discussed herein, the Court finds that consideration of the Eitel factors

11  weighs in favor of granting default judgment.

12      1.    Possibility of Prejudice to Plaintiff

13      The first factor considered is whether Plaintiff would suffer prejudice if default judgment

14  is not entered.  See PepsiCo, Inc., 238 F.Supp.2d at 1177.  Plaintiff argues that denying default

15  judgment would prejudice it because Defendant Cheema has refused to participate in this action

16  and has made default judgment the sole avenue of relief available to Plaintiff.  (Mot. at 6.)

17      Generally, where default has been entered against a defendant, a plaintiff has no other

18  means by which to recover against that defendant.  PepsiCo, Inc., 238 F.Supp.2d at 1177;

19  Moroccanoil, Inc. v. Allstate Beauty Prods., 847 F.Supp.2d 1197, 1200–01 (C.D. Cal. 2012).

20  Here, the Court finds Plaintiff would be prejudiced if default judgment were not granted because,

21  absent entry of a default judgment, Plaintiff will be without recourse against Defendant given his

22  unwillingness to pay the amounts due under the Agreement.  See Vogel v. Rite Aid Corp., 992

23  F.Supp.2d 998, 1007 (C.D. Cal. 2014).  This factor weighs in favor of default judgment.

24      2.    Merits of Plaintiff's Claim and Sufficiency of the Complaint

25      The second and third Eitel factors, taken together, "require that [the] plaintiff[s] state a

26  claim on which [they] may recover."  PepsiCo, Inc., 238 F.Supp.2d at 1175.  Notably a

27

28  [2] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

"defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007). Here, Plaintiff brings a breach of contract claim against Defendant Cheema. (Compl. at 8.) Plaintiff argues that it is entitled to judgment on the merits of the claim because Plaintiff has performed all conditions and obligations under the Agreement. (Mot. at 6.) However, Defendant Cheema entered into a written agreement, breached his duty under the Agreement by defaulting on his payment obligations which has resulted in the entire unpaid amount becoming due and payable immediately, with interest. (Id.)

Under California law, the elements for a breach of contract claim are: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom." Wall St. Network, Ltd. v. New York Times Co., 164 Cal. App. 4th 1171, 1178 (2008) (quoting Regan Roofing Co. v. Superior Court, 24 Cal.App.4th 425, 434–435 (1994)). The complaint establishes each of these elements. Plaintiff entered into a loan and security agreement with Defendant Cheema whereby Plaintiff agreed to finance Defendant Cheema's purchase of the tractor for use in Defendant Cheema's business. (Compl. at ¶ 10; Loan and Security Agreement, Ex. A, ECF No. 1 at 11-15.) Plaintiff fully performed its obligations under the loan and security agreement by financing Defendant Cheema's purchase of the tractor. (Mot. at ¶¶ 10, 53.) Defendant Cheema breached the terms of the loan and security agreement by defaulting on his payments which were due under the Agreement. (Id. at ¶¶ 13, 14, 54.) Plaintiff's prayer for relief also sets forth its claim for the amount due under the Agreement, including attorneys' fees, costs, late fees, and interest. (Id. at ¶¶ 55, 56, p. 9.) Thus, the second and third Eitel factors support entry of default judgment.

### 3.   The Sum of Money at Stake in the Action

Under the fourth Eitel factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F.Supp.2d at 1176; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003). The amount at stake must not be disproportionate to the harm alleged. See Lehman Bros. Holdings Inc. v. Bayporte Enters., Inc., No. C 11-0961-CW, 2011 WL 6141079, at *7 (N.D. Cal.

Oct. 7, 2011).  Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to the defendant's conduct.  Truong Giang Corp. v. Twinstar Tea Corp., No. C 06-03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007).

Plaintiff argues that the sum of money at stake here is reasonable in light of the terms of the contract as it is in accord with the terms of the Agreement.  (Mot. at 7.)  Here, Plaintiff requests contractual money damages relating to the tractor under the Agreement, including interest and attorneys' fees and costs where Defendant Cheema has failed to make such payments.  (ECF No. 1 at ¶¶ 15-18, p. 9; Ex. A, ECF No. 1 at 11-15.)  The bulk of Plaintiff's contractual damages consists of the principal remaining on the purchase price of the vehicle.  (See id.)  Thus, the Court finds the requested contractual damages reasonable for the purposes of permitting the entry of default judgment.

### 4.    The Possibility of a Dispute Concerning Material Facts

The next Eitel factor considers the possibility of a dispute concerning material facts. Plaintiff contends that there is little possibility of dispute of the material facts as Plaintiff has clearly set forth the facts and has provided evidence of their existence.  (Mot. at 7.)

As discussed previously, Plaintiff has met its burden of establishing a breach of contract claim.  Defendant Cheema has defaulted.  Since "all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."  Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005).  Thus, taking the pleaded facts as true, the Court finds this factor favors entry of default judgment.

### 5.    Whether the Default was Due to Excusable Neglect

The sixth Eitel factor considers the possibility that a defendant's default resulted from excusable neglect.  PepsiCo, Inc., 238 F.Supp.2d at 1177.  Courts have found that where a defendant was "properly served with the complaint, the notice of entry of default, as well as the paper in support of the [default judgment] motion," there is no evidence of excusable neglect. Shanghai Automation Instrument Co. v. Kuei, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001).

Plaintiff argues that there is no evidence of excusable neglect resulting in default.  (Mot.

at 7.)  As discussed above, Defendant Cheema was properly served with the complaint in this matter.  (ECF No. 9.)  He was also served with a copy of the motion for default judgment and the order continuing the hearing on the motion.  (ECF No. 16 at 9; ECF No. 21 at 3.)

The Court finds this factor weighs in favor of granting default judgment as Defendant Cheema has failed to file a responsive pleading or otherwise appear in this action, despite being properly served.  See Shanghai Automation Instrument Co., 194 F.Supp.2d at 1005 ("The default of defendant … cannot be attributed to excusable neglect.  Plaintiff was properly served with the complaint, the notice of entry of default, as well as the papers in support of the instant motion.").

      6.      The Strong Policy Favoring a Decision on the Merits

"Cases should be decided upon their merits whenever reasonably possible."  Eitel, 782 F.2d at 1472.  However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action.  PepsiCo, Inc., 238 F.Supp.2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F.Supp.2d 1039, 1061 (N.D. Cal. Mar. 5, 2010).  Accordingly, the Court finds this factor weighs in favor of granting default judgment.  See PepsiCo, Inc., 238 F.Supp.2d at 1177 ("Defendant's failure to answer Plaintiffs' complaint makes a decision on the merits impractical, if not impossible. Under Fed. R. Civ. P. 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action.").

In conclusion, the Court finds default judgment is appropriate as to Defendant Cheema.  Therefore, the Court finds Plaintiff's motion for default judgment should be granted as to Defendant Cheema.

**D.     Requested Relief**

Plaintiff seeks damages, attorney fees, costs, interest, and late fees on all unpaid amounts due and owing under the Agreement.  As relevant here, the Agreement entered into by the parties provides:

> **5.2     Remedies.**  Upon the occurrence or an event of default, . . . Lender may . . . declare this Agreement to be in default  . . . and (iv) exercise all of the rights and remedies of a secured party under the Uniform Commercial Code and any other applicable laws, including the right to require Debtor to assemble the Equipment and deliver it to Lender at a place to be designated by Lender and to enter any

premises where the Equipment may be without Judicial process and take possession thereof. . . . Lender may dispose of any Equipment at a public or private sale or at auction. Lender may buy at any sale and become the owner of the Equipment. . . . Debtor shall also pay to Lender all expenses of retaking, holding, preparing for sale, selling and the like, including without limitation (a) the reasonable fees or any attorneys retained by Lender, and (b) all other legal expenses incurred by Lender. . . .

**5.3   Acceleration Interest.**  Debtor agrees to pay Lender, upon acceleration or of the above indebtedness, interest on all sums then owing hereunder at the rate of 1 1/2% per month if not prohibited by law, otherwise at the highest rate Debtor can legally obligate itself to pay or Lender can legally collect under applicable law.

(Loan and Security Agreement, ECF No. 17 at 11 (emphasis in original).)

1.   Damages

A plaintiff must prove all damages sought in the complaint, and "[a] judgment by default shall not be different in kind [or] exceed in amount that prayed for in the [complaint]." Fed. R. Civ. P. 54(c).  The prevailing party in a breach of contract claim is entitled to recover "as nearly as possible the equivalent of the benefits of performance."  Lisec v. United Airlines, Inc., 10 Cal.App.4th 1500, 1503 (1992).  In determining the appropriate sum for a default judgment, the court may rely on the affidavits or documentary evidence submitted by the plaintiff or order a full evidentiary hearing.  Fed. R. Civ. P. 55(b)(2); see also Philip Morris USA, Inc., 219 F.R.D. at 498.  "Where damages are liquidated (i.e., capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits), judgment by default may be entered without a damages hearing."  Microsoft Corp., 549 F.Supp.2d at 1235 (citing Dundee Cement Co. v. Howard Pipe & Concrete Prods., 722 F.2d 1319, 1323–24 (7th Cir. 1983)).

Plaintiff seeks the following contractual damages under the Agreement:

| | |
|---|---|
| Principal: | $80,283.90[3] |
| Unpaid Interest & Fees: | $11,142.73 |
| Other Post Accel. Fees (repossession fees): | $2,377.00[4] |
| **Total:** | **$93,803.63** |

(Mot. at 8; Decl. of Micki Koepke (Koepke Decl. ¶ 37., ECF No. 17; Ex. 5, Loan Damage

---

[3] (ECF No. 17 at 35.)
[4] (Ex. 6, ECF No. 17 at 39-41.)

Calculator, ECF No. 17 at 37.)

As previously discussed, Plaintiff has met its burden of establishing its breach of contract claims, which remain unchallenged by Defendant, and is thus the prevailing party in this action. Plaintiff's aforementioned damages, the amounts of which are supported by the attached agreements, receipts, and supporting declarations, result directly from Defendant Cheema's breach of contract.  Since Plaintiff's request appears to be supported by the record and by the proper analysis, and Defendant has not appeared to oppose the request, the Court recommends Plaintiff be granted its contractual damages in the amount of $93,803.63.

### 2. Attorney Fees

"In a diversity case, the law of the state in which the district court sits determines whether a party is entitled to attorney fees, and the procedure for requesting an award of attorney fees is governed by federal law."  Riordan v. State Farm Mut. Auto. Ins. Co., 589 F.3d 999, 1004 (9th Cir. 2009) (quoting In re Larry's Apartment, L.L.C., 249 F.3d 832, 837–38 (9th Cir. 2001)). California follows the "American rule," under which each party to a lawsuit must pay its own attorneys' fees unless a contract or statute or other law authorizes a fee award.  Cal. Code Civ. Proc. §§ 1021, 1033.5(a)(10); Musaelian v. Adams, 45 Cal.4th 512, 516 (2009).  California Civil Code § 1717 governs attorney fees awards authorized by contract and incurred in litigating claims sounding in contract.  Frog Creek Partners, LLC v. Vance Brown, Inc., 206 Cal.App.4th 515, 523 (2012); Silverado Modjeska Recreation & Parks Dist. v. Cnty. of Orange, 197 Cal.App.4th 282, 310 (2011).  Under section 1717, when a contract provides for an award of fees "incurred to enforce that contract," "the party prevailing on the contract ... shall be entitled to reasonable attorney's fees. . . ."  Cal. Civ. Code § 1717(a).

Here, Plaintiff seeks fees in the amount of $6,240.00 and costs in the amount of $662.28. (Decl. of Jennifer Witherell Crastz Re: Attorney Fees and Costs ("Crastz Decl.") ¶¶ 5, 7, 8, ECF No. 18.)  As discussed above, the Agreement provides that Defendant will pay reasonable attorney fees due to his default on his payment obligations.  (Loan and Security Agreement at 11.)  Therefore, Plaintiff is entitled to reasonable attorney fees.

"[U]nder federal fee shifting statutes the lodestar approach is the guiding light in

1  determining a reasonable fee." <u>Antoninetti v. Chipotle Mexican Grill, Inc.</u>, 643 F.3d 1165, 1176

2  (9th Cir. 2010) (internal punctuation and citations omitted).  The Ninth Circuit has explained the

3  lodestar approach as follows:

> The lodestar/multiplier approach has two parts.  First a court determines the
> lodestar amount by multiplying the number of hours reasonably expended on the
> litigation by a reasonable hourly rate.  The party seeking an award of fees must
> submit evidence supporting the hours worked and the rates claimed.  A district
> court should exclude from the lodestar amount hours that are not reasonably
> expended because they are excessive, redundant, or otherwise unnecessary.
> Second, a court may adjust the lodestar upward or downward using a multiplier
> based on factors not subsumed in the initial calculation of the lodestar.  The
> lodestar amount is presumptively the reasonable fee amount, and thus a multiplier
> may be used to adjust the lodestar amount upward or downward only in rare and
> exceptional cases, supported by both specific evidence on the record and detailed
> findings by the lower courts that the lodestar amount is unreasonably low or
> unreasonably high.

<u>Van Gerwin v. Guarantee Mut. Life Co.</u>, 214 F.3d 1041, 1045 (9th Cir. 2000) (internal citations

and punctuation omitted).

13      Under the lodestar method, the Court will first determine the appropriate hourly rate for

14  the work performed, and that amount is then multiplied by the number of hours properly

15  expended in performing the work.  <u>Antoninetti</u>, 643 F.3d at 1176.  The district court has the

16  discretion to adjust the number of hours claimed or the lodestar but is required to provide a clear

17  but concise reason for the fee award.  <u>Gates v. Deukmejian</u>, 987 F.2d 1392, 1398 (9th Cir. 1992).

18  The lodestar amount is to be determined based upon the prevailing market rate in the relevant

19  community.  <u>Blum v. Stenson</u>, 465 U.S. 886, 896 (1984).

20      **a.      Reasonable Hourly Rates**

21      The fee applicant bears a burden to establish that the requested rates are commensurate

22  "with those prevailing in the community for similar services by lawyers of reasonably

23  comparable skill, experience, and reputation."  <u>Blum</u>, 465 U.S. at 895 n.11.  An applicant meets

24  this burden by producing "satisfactory evidence—in addition to the attorney's own affidavits—

25  that the requested rates are in line with those prevailing in the community for similar services by

26  lawyers of reasonably comparable skill, experience and reputation."  <u>Id.</u>; <u>see also</u> <u>Chaudhry v.</u>

27  <u>City of L.A.</u>, 751 F.3d 1096, 1110–11 (9th Cir. 2014) ("Affidavits of the plaintiffs' attorney[s]

28  and other attorneys regarding prevailing fees in the community ... are satisfactory evidence of the

prevailing market rate.").  The Court may apply "rates from outside the forum ... 'if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case.' "  Barjon v. Dalton, 132 F.3d 496 (9th Cir. 1997) (quoting Gates, 987 F.2d at 1405).

Hourly rates for attorney fees awarded in the Eastern District of California range from $200 to $750, with hourly rates exceeding $600 reserved for attorneys who have been practicing approximately 30 years.  See, e.g., Cianchetta v. BMW of N. Am., LLC, No. 2:20-cv-00241-KJM-JDP, 2022 WL 2160556, at *6 (E.D. Cal. Jun. 13, 2022) (reducing the hourly rate for attorneys in their first year of practice to $200); Seebach v. BMW of N. Am., LLC, No. 2:18-cv-00109-KJM AC, 2020 WL 4923664 at *3 (E.D. Cal. Aug. 21, 2020) (awarding the hourly rates of $200 for an attorney who had been admitted to practice less than two years, and $505 for an attorney "with roughly 20 years of experience" in 2020); Siafarikas v. Mercedez- Benz USA, LLC, No. 2:20-cv-01784-JAM-AC, 2022 WL 16926265, at *3 (E.D. Cal. Nov. 10, 2022) (approving the hourly rate of $250 for an attorney "who has practiced law for three years" and $500 for an attorney who had practiced law for 21 years).

Ms. Crastz is a partner in the law firm representing Plaintiff in this matter.  (Crastz Decl. at ¶ 1.)  She was admitted to practice in California in 1996 and has more than 28 years of litigation experience with an emphasis in creditors' rights and business and commercial litigation.  (Id. at ¶ 9.)  She is seeking $325.00 per hour for her work in this matter.  In light of the aforementioned legal authorities, the Court finds Ms. Crastz's hourly rate of $325.00 is reasonable.

### b.    Reasonable Attorney Time Expended

Ms. Crastz proffers Plaintiff has incurred $3,965.00 in attorneys' fees (12.2 hours) in connection with this matter. (Crastz Decl. at ¶ 5; Ex. 7, ECF No. 18 at 5–9.)  The Court finds the time expended in this matter, as set forth in counsel's timesheets, is reasonable.

Ms. Crastz further proffers an additional 5.5 hours to prepare the instant motion for default judgment and anticipates an additional 1.5 hours relating to her appearance on the motion. (Crastz Decl. ¶ 7.) The Court finds the time expended on preparation of the instant

motion and all supporting documents is reasonable; however, the amount of time relating to appearing on this matter must be discounted. The hearing on the instant motion was vacated, and the 1.5 hours to appear at the hearing were not used. Accordingly, the Court finds Ms. Crastz reasonably expended an additional 5.5 hours related to the instant motion for default judgment, for an additional total of $1,787.50.

Based on the foregoing, the Court recommends Plaintiff be awarded 17.7 hours of attorney time (x $325.00 hourly rate), for a total reasonable fee amount of $5,752.50.

### 4.   Litigation Expenses and Costs

Plaintiff seeks a total of $662.28 in costs, which consists of the filing fee ($405.00) and service of process ($257.28).[5]   (Crastz Decl. at ¶ 10.)   Plaintiff's costs are also permitted pursuant to the Agreement.[6] (Loan and Security Agreement, ECF No. 17 at 11.)   Further, the Court finds that the costs are reasonable.   See 42 U.S.C. § 12205. Accordingly, the Court recommends Plaintiff be awarded its costs in the amount of $662.28.

## IV.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1.   Plaintiff BMO Harris Bank N.A.'s motion for default judgment (ECF No. 16) be GRANTED, as follows:

2.   Default judgment be ENTERED in favor of Plaintiff BMO Harris Bank N.A. against Defendant Cheema in the amount of $100,218.41, which consists of:

    a)   Principal:             $80,283.90

    b)   Interest and late fees:    $11,142.73

---

[5] Service on Defendant Cheema ($99.92) (ECF No. 9 at 2), Fresno Truck Tire and Service ($99.68) (ECF No. 6 at 2); and Amarjit Singh ($57.68) (ECF No. 5 at 3).

[6] The Court notes that Plaintiff is seeking fees for service of process on the Fresno Truck Defendants who have been dismissed from this action.  (Crastz Decl. at ¶ 10.)  The Agreement provides that Defendant Cheema shall pay "all expenses of retaking, holding, preparing for sale, selling and the like, including without limitation (a) the reasonable fees or any attorneys retained by Lender, and (b) all other legal expenses incurred by Lender." (ECF No. 17 at 11.) At the time that the complaint in this action was filed, Fresno Truck Defendants had possession of the vehicle and were not responding to Plaintiff's demand for surrender of the tractor. (Compl. at ¶ 30.)  The Court finds that the expense of service on Fresno Truck Defendants was reasonably an expense for retaking the truck and therefore is reimbursable under the Agreement.

| | c) | Repossession Fees: | $2,377.00 |
| | d) | Attorneys' Fees: | $5,752.50 |
| | e) | Legal Costs: | $662.28 |

3. Upon sale of the identified vehicle in a commercially reasonable manner, the money judgment entered herein be credited with the net sales proceeds.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within **fourteen (14) days** of service of this recommendation, any party may file written objections to these findings and recommendations with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __October 1, 2024__

_____
UNITED STATES MAGISTRATE JUDGE